(No. 6958—

MONTGOMERY ELEVATOR COMPANY, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 7, 1977.*

GRADY F. HOLLEY, of GIFFIN, WILLING, LINDER, NEWKIRK, COHEN, BODEWES & NARMONT, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

POLOS, C.J.

Claimant, Montgomery Elevator Company, seeks damages from the State in the amount of $8,832.00. The claim is founded upon a contract between the parties by which Claimant agreed to service elevators, dumb-waiters and escalators in the State Capitol complex

during the period July 1, 1971, through June 30, 1972. The contract provided for Respondent to pay Claimant the sum of $2,944.00 per month during each and every month of the contract. Claimant performed and was paid under the contract thru March 31, 1972. At issue is whether Claimant should be paid for the months of April, May and June, 1972.

Respondent denies that it was obliged to pay Claimant for the final three months of Claimant's contract. Respondent argues that it rightfully rescinded the contract on or about April 16, 1972, and that the State is therefore not obligated to pay Claimant for the last three months of the contract.

On March 30, 1972, a strike was called against certain elevator repair companies. Montgomery Elevator Company was among the companies struck by the International Union of Elevator Constructors. Claimant's employees Michael Sanders and Everett Hofele in Springfield, Illinois stopped working as a result of the strike. After the strike was called, Claimant attempted to, and did continue to, maintain preventative maintenance schedules with supervisory help, and notified Respondent that it was able to perform under the contract with supervisory personnel.

On or about April 2, 1972, an elevator emergency occurred on the capitol grounds. A supervisory employee of Claimant went to the grounds to assist in the emergency. As a result of the presence of that supervisory employee, a picket line was established by the International Union of Elevator Constructors at the Capitol Building, which caused union tradesmen working on renovative construction work at the Capitol Building to cease work. Claimant's supervisory employee was asked to leave the Capitol Building by

an employee of the Secretary of State, whereupon the tradesmen employed at that building resumed their work. Shortly thereafter, Respondent entered into a new contract for maintenance of the elevators with a different elevator company which was not the object of the strike.

Respondent argues that Claimant breached the contract by failing to have service available on a 24-hour a day basis, and, in addition, in failing to have more than one serviceman available in Springfield at all times and on the job Monday through Friday of each week from 8:00 a.m. to 5:00 p.m.

Claimant responds with the argument that maintenance calls during the first few days of the strike were handled by supervisory personnel who also responded to any emergency problems. Therefore, Claimant argues, it substantially complied with the contract. Claimant contends that it stood ready to perform its obligations, but was prevented from doing so by Respondent which ordered Claimant's employee off of the job as a result of other tradesmen honoring a picket line.

Claimant was terminated within eight work days after the national strike occurred. There is no evidence in the record to justify the conclusion that Claimant failed to respond to emergency calls or failed to render adequate maintenance to the equipment during the first eight working days of April, 1972. Clearly, after Claimant was ordered by Respondent to remove its personnel from the State building complex, further performance under the contract would have been impossible.

Respondent does not argue that Claimant failed to perform such maintenance and emergency duties as

were reasonably required under the contract prior to the strike, nor does Respondent argue that necessary maintenance and emergency work was not available after the strike. Respondent's sole contention relates to whether the absence of two full-time employees in Springfield is sufficient to entitle Respondent to rescind the service contract and seek the services of another contractor.

Respondent relies on *Wenthe Bros. v. State, 18 Ill.Ct.Cl. 32 (1948),* for the proposition that strikes do not excuse the non-performance of contracts with the State in the absence of a strike clause. Respondent's reliance is misplaced for the reason that in *Wenthe* the Claimant was prohibited from performing due directly to a strike. In the present case, the Claimant was asked to leave the Capitol grounds by the State, because of the effect that Claimant's personnel were having on other workmen completing other work on the Capitol grounds.

Rescission is an extreme right, and should not be permitted unless the breach is total, substantial and fundamental, and defeats the object of the contract. *I.L.P. Contracts, § 347.* There is no proof in the present record that the object of the contract was defeated by a breach as Respondent contends. Rather, it appears that Claimant was prevented from performing by Respondent, which ordered Claimant's personnel from the Capitol complex without justification.

It is therefore ordered that Claimant be awarded the sum of $8,832.00.